UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

ELIZABETH SCHECHTMAN,

    Plaintiff,

vs.

WASSERMAN MUSIC, LLC, and
WASSERMAN MEDIA GROUP, LLC,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Elizabeth Schechtman ("Plaintiff"), sues Defendants, Wasserman Music, LLC ("Wasserman Music") and Wasserman Media Group, LLC ("Wasserman Media Group") (Wasserman Music and Wasserman Media Group are collectively referred to herein as "Defendants"), and alleges as follows:

1. Plaintiff has initiated the instant action to redress violations by Defendants of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA").

2. Plaintiff seeks all damages provided for under the FMLA, including back pay, liquidated damages, and attorneys' fees and costs, arising from Defendants' unlawful retaliation against Plaintiff for exercising her rights under the FMLA.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff is an individual over the age of 18 and is otherwise *sui juris*.

4. During the relevant period, Plaintiff was a resident of Miami-Dade County, Florida.

5. During the relevant period, Defendants were Limited Liability Companies that conducted business in the Southern District of Florida.

Case No. _____

6. During the relevant period, Defendants acted through their owners, officers, agents, servants, and employees, all of whom acted within the scope of their employment with Defendants.

7. During the relevant period, Defendants were Plaintiff's employer for purposes of the FMLA and there were overlapping and shared functions between the Defendants.

8. During the relevant period, Plaintiff was an "employee" as that term is defined under the FMLA, as Plaintiff performed services for, and was under the control and direction of Defendants, and was provided wages and other remuneration by Defendants.

9. Wasserman Music and Wasserman Media Group were co-employers or joint employers of Plaintiff because, among other reasons, they both directed and reviewed Plaintiff's work, controlled Plaintiff's work assignments, modified and set Plaintiff's employment terms and conditions, co-determined the essential terms and conditions of Plaintiff's employment, set Plaintiff's work schedule, determined Plaintiff's benefits, and controlled Plaintiff's FMLA leave.

10. During the relevant period, Wasserman Music and Wasserman Media Group shared resources and had common interests and ownership.

11. Wasserman Music and Wasserman Media Group operated as a single, common, interconnected entity.

12. In the 12 months prior to Plaintiff needing leave and/or requesting time off from work for her own serious health condition, Plaintiff worked for Defendants on a full-time basis and worked in excess of 1,250 hours.

13. During the relevant period, Defendants had at least 50 employees within a 75-mile radius at the location(s) Plaintiff was assigned to, reported to, and/or received assignments from.

14. Jurisdiction is conferred upon this Court as claims regarding violations of the FMLA can be brought in the appropriate District Court.

15. This Court has original jurisdiction over claims arising under the FMLA pursuant to 29 U.S.C. § 2617(a)(2).

16. Venue is proper in the Southern District of Florida because:

    a. Plaintiff was employed by Defendants while residing in the Southern District of Florida and would have remained employed in the Southern District of Florida but for Defendants' unlawful actions;

    b. The acts that give rise to the claims of Plaintiff occurred in the Southern District of Florida; and

    c. During the relevant period, Defendants transacted business in the Southern District of Florida.

17. This is an action by Plaintiff for damages, including but not limited to lost wages, benefits, and other compensation, liquidated damages, and attorneys' fees and costs.

## PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE REMEDIES

18. Claims under the FMLA do not have prerequisites or preconditions to filing a lawsuit.

19. In the alternative, Plaintiff has exhausted and/or met all prerequisites and preconditions to filing this lawsuit.

20. No administrative remedies were required to be exhausted prior to bringing this action under the FMLA.

## FACTUAL ALLEGATIONS

21. Plaintiff began working for Paradigm Talent Agency ("Paradigm") in or about August 2016, and worked as a Director, Business Affairs, Music, until in or about April 2021 when Paradigm's music department was acquired by Defendants.

Case No. _____

22. Plaintiff worked for Defendants as a Senior Director, Business Affairs, until she was unlawfully terminated on July 18, 2025.

23. Throughout her employment with Defendants, Plaintiff met or exceeded all performance expectations, was never disciplined, and consistently received positive performance reviews.

24. For the first several years of her employment, Plaintiff reported to Stephanie Morris, Senior Vice President, Music Business Affairs, who consistently provided positive feedback to Plaintiff and held Plaintiff out as a model employee.

25. In or about July 2023, Plaintiff's reporting structure changed when Ms. Morris retired and Plaintiff began reporting to Kelly Weiss, Senior Vice President, Business & Legal Affairs.

26. Plaintiff worked in a fully remote capacity for Defendants.

27. Plaintiff suffers from bipolar disorder and generalized anxiety disorder ("GAD"), conditions for which she receives ongoing treatment from her psychiatrist, Dr. Nicolas Sikaczowski.

28. In July 2024, Ms. Weiss told Plaintiff that she wanted Plaintiff to take on a full-time role working with brand partnerships ("BP") agreements, while previously Plaintiff's BP responsibilities had been part-time. The reasons given by Ms. Weiss for the change were: (i) the BP agents were very satisfied with Plaintiff's work and wanted more of her help; and (ii) the BP agreement workload had significantly increased. At that time, no formal job duties had been defined or communicated.

29. In August 2024, Plaintiff experienced bipolar disorder symptoms, including, among other symptoms, severe anxiety and sleep disturbances, that required immediate medical attention

4

Case No. _____

and treatment.

30. Plaintiff was deemed by Defendants to be eligible for, and covered by, the FMLA and on August 19, 2024, Plaintiff took FMLA leave due to her bipolar disorder.

31. Plaintiff was required to coordinate her FMLA leave with Meg Stephenson, Vice President, People Operations.

32. On August 19, 2024, while out on FMLA leave, Plaintiff spoke with Ms. Weiss and explained her mental health conditions and further disclosed she suffers from bipolar disorder and was experiencing symptoms related to that.

33. Plaintiff remained out on FMLA leave until she returned to work on September 30, 2024.

34. Upon her return from FMLA leave, Plaintiff's treating physician provided medical restrictions stating, among other things: "To avoid worsening of Elizabeth's chronic mental health symptoms, Elizabeth should avoid required work activities that affect her ability to maintain a regular sleep schedule due to late hours and/or additional stress."

35. However, upon return from her FMLA leave, Plaintiff was assigned to handle BP agreements on a full-time basis.

36. Despite the increased demands of her new role, Plaintiff excelled and successfully negotiated and closed a significant number of BP agreements.

37. In November 2024, recognizing the demanding nature of her new position, Plaintiff requested a $15,000 raise from Ms. Weiss.

38. Ms. Weiss claimed she would discuss Plaintiff's raise request internally with company leadership.

39. Ms. Weiss never provided any update to Plaintiff.

40. On February 25, 2025, during her performance evaluation, Plaintiff inquired about her requested raise and Ms. Weiss responded that Plaintiff's request had been denied on the basis that no employee that reported to Ms. Weiss was receiving a raise above 4%.

41. Plaintiff was suspicious of Ms. Weiss' response and asked whether her raise was denied because she took FMLA leave and had medical conditions, which required work restrictions.

42. Appearing flustered, Ms. Weiss denied that Plaintiff's leave or medical conditions were a factor and Ms. Weiss continued to maintain that no one on her team was receiving a raise above 4%.

43. That same day, Plaintiff had a telephone conversation with Ms. Stephenson expressing her belief that she was not receiving the requested raise due to her FMLA leave and work restrictions.

44. Ms. Stephenson denied that Plaintiff's FMLA leave or work restrictions were a factor but confirmed that Plaintiff's "numbers looked good" and recommended that Plaintiff speak with Eden Andu, Vice President, Employee Relations & People Partner, and who is the Human Resources contact for employees that work in music.

45. On February 27, 2025, Plaintiff had a telephone conversation with Ms. Andu, expressing the same concerns about FMLA retaliation. Ms. Andu simply dismissed Plaintiff's concerns.

46. In March 2025, Plaintiff discovered that her peer and equal counterpart in BP, Tiffany Haimof, who also reports to Ms. Weiss, had received a promotion to Vice President, Business Affairs, in February 2025, the same time period when Plaintiff's raise request had been denied. Further, upon information and belief, Ms. Haimof received a raise above 4%.

Case No. _____

47. Prior to the promotion, Ms. Weiss had repeatedly made clear to Plaintiff that she and Ms. Haimof were "equals."

48. At the time of Ms. Haimof's promotion, Plaintiff had been a Senior Director for three years while Ms. Haimof had held the Senior Director position for only one year.

49. Ms. Haimof, however, had not required a medical leave of absence nor did she suffer from Plaintiff's mental health conditions.

50. Further, in an apparent attempt to hide the promotion from Plaintiff, when communicating with Plaintiff after February 2025, Ms. Haimof did not include her signature block in emails.

51. On or about May 12, 2025, in anticipation of Ms. Haimof being out of the office for several weeks for vacation, and the resulting increase to Plaintiff's workload, Plaintiff spoke with Ms. Weiss on the phone about Plaintiff's work restrictions in place because of Plaintiff's bipolar disorder, anxiety, and necessary accommodations.

52. After the call, Ms. Weiss sent an email acknowledging the discussion.

53. On May 20, 2025, Plaintiff sent an email to Stephanie Miles, Head of Music Brand Partnerships (who Plaintiff frequently handled deals for), along with others, reiterating her work restrictions.

54. In addition, on May 28, 2025, Plaintiff spoke to Sara Pullman, Vice President, Music Operations, about Plaintiff's concerns that she was passed over for promotion and denied her requested raise because of her FMLA leave, mental health conditions, and work restrictions.

55. Throughout her employment with Defendants, Plaintiff had been advised that employment concerns related to the Music Department should be directed to Ms. Pullman who would work to address any concerns.

Case No. _____

56. Ms. Pullman claimed she did not know why Ms. Haimof was promoted over Plaintiff, but stated she would check with her boss, Joe Rosenberg, Executive Vice President, Global Music Operations.

57. Plaintiff never heard back from Ms. Pullman, nor did Mr. Rosenberg reach out to Plaintiff to discuss her concerns.

58. On June 6, 2025, Plaintiff sent another email, bcc'ing Ms. Miles and the BP group, reiterating that she has work restrictions that were "in place with HR for health reasons" and that she needed "to abide by those."

59. On July 17, 2025, Plaintiff sent an email to Ms. Weiss requesting permission to change her remote work location from Florida to Ohio to be near her parents for additional support with her bipolar disorder. Ms. Weiss never responded.

60. The next day, July 18, 2025, Plaintiff was terminated by Defendants.

61. During the termination meeting, which was run by Ms. Weiss and Ms. Andu, Defendants provided shifting and contradictory reasons for Plaintiff's termination.

62. Initially, Ms. Weiss claimed that Plaintiff was being terminated due to a complaint from one person, which Ms. Weiss noted was "exactly the same" as a February 2024 complaint. Plaintiff had not been disciplined for the February 2024 complaint nor found to have engaged in any wrongdoing as Plaintiff had provided evidence disproving the allegations.

63. When pressed for details by Plaintiff, Ms. Weiss then claimed the complaint was that Plaintiff was not "turning agreements around fast enough," which directly contradicted her own recent emails praising Plaintiff's performance and acknowledging that Plaintiff was handling double the workload.

64. Then, Ms. Andu blurted out that Defendants "could no longer accommodate"

Case No. _____

Plaintiff's work restrictions.

65. This statement from Ms. Andu was clearly pretextual given that Plaintiff had been exceeding her performance expectations and performing all essential job functions without any issue.

66. Defendants' shifting explanations for Plaintiff's termination demonstrate pretext.

67. To cover up its wrongdoing and silence Plaintiff, Defendants have made Plaintiff's receipt of severance and Defendants' promise to pay Plaintiff's health insurance through the end of 2025 contingent on Plaintiff signing a general release to preclude her from bringing a claim. Plaintiff refused to sign a general release agreement.

68. Since her termination, Plaintiff's mental health has declined drastically, and Plaintiff has needed to work closely with her psychiatrist on medication changes.

69. The termination has caused Plaintiff significant emotional distress and has negatively impacted her medical conditions.

70. Defendants' actions constitute unlawful retaliation against Plaintiff for exercising her rights under the FMLA and for opposing practices that she reasonably believed violated the FMLA.

71. Plaintiff has retained the undersigned legal counsel to prosecute this action on her behalf and has agreed to pay a reasonable fee for legal services.

## COUNT I
## VIOLATIONS OF THE FMLA AGAINST DEFENDANTS - RETALIATION

72. Plaintiff re-adopts every factual allegation as stated in paragraphs 1 through 71 above as though fully recited herein.

73. Plaintiff was entitled to FMLA leave because of her own qualifying serious health condition, specifically bipolar disorder and generalized anxiety disorder.

Case No. _____

74. Plaintiff engaged in protected activity under the FMLA by taking FMLA leave from August 19, 2024 through September 29, 2024 for her serious health condition, and then complaining on multiple occasions, including within two months of her termination, about being retaliated against for having taken a leave of absence under the FMLA.

75. Defendants subjected Plaintiff to adverse employment actions, including denying her requested raise, passing her over for promotion, and ultimately terminating her employment, because she engaged in protected activity under the FMLA.

76. But for Plaintiff's protected activities, she would not have been subjected to adverse employment actions.

77. There was a causal connection between Plaintiff's protected activities and the adverse employment actions taken by Defendants, as evidenced by the temporal proximity between Plaintiff's complaints about FMLA retaliation and the adverse employment actions.

78. The causal connection and pretext are further evidenced by Defendants' shifting and contradictory explanations for Plaintiff's termination, including the ultimate admission that Defendants "could no longer accommodate" Plaintiff's work restrictions, despite having successfully accommodated those same restrictions for months.

79. Defendants' conduct constituted unlawful retaliation against Plaintiff in violation of the FMLA.

80. Defendants' actions constituted a willful violation of the FMLA. Therefore, Plaintiff is entitled to liquidated damages.

81. As a result of Defendants' intentional, willful, and unlawful acts and omissions, Plaintiff has suffered and continues to suffer substantial losses, including past and future lost wages

Case No. _____

and benefits. Plaintiff is also entitled to liquidated damages, attorneys' fees and costs, and other damages recoverable by law.

82. Finally, given that the music attorney space is so specialized and tightknit, Plaintiff's future job opportunities are severely limited by Defendants' wrongdoing.

**WHEREFORE**, Plaintiff respectfully prays that the Court award Plaintiff the following relief against Defendants:

A. Enter judgment in favor of Plaintiff;

B. Award Plaintiff for her past and future loss of wages and benefits, plus interest;

C. Award Plaintiff liquidated damages equal to the sum of the amount of damages and interest;

D. Provide reinstatement to a position comparable to her former position, or in lieu of reinstatement, award front pay including benefits;

E. Award Plaintiff reasonable attorneys' fees and costs; and

F. Award such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable of right by a jury.

Dated: August 19, 2025

Respectfully submitted,
**BT LAW GROUP, PLLC**
3050 Biscayne Blvd., Suite 205
Miami, Florida 33137
Tel: (305) 507-8506

By: s/ Jason D. Berkowitz
**ANISLEY TARRAGONA, ESQ.**
Florida Bar No. 51626
anisley@btattorneys.com
**JASON D. BERKOWITZ, ESQ.**
Florida Bar No. 0055414
jason@btattorneys.com
Attorneys for Plaintiff